IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | :  CASE NO.: 7:23-CR-00083 (WLS-TQL) |
| EDDIE LEE FLOURNAH, JR., | : |
| | : |
| Defendant. | : |
| | : |

**ORDER**

Before the Court is Defendant's Motion to Suppress (Doc. 36) ("the Motion"), filed on June 25, 2024. Therein, Defendant moves the Court to suppress all evidence seized by law enforcement officials during an investigatory stop on November 1, 2022. For the reasons stated herein, Defendant's Motion to Suppress is **DENIED**.

## I. PROCEDURAL BACKGROUND

On December 13, 2023, Defendant Eddie Lee Flournah, Jr. ("Defendant") was charged in a one-count Indictment (Doc. 1) with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Indictment alleges that, on or about November 1, 2022, Defendant knowingly possessed a firearm after having been convicted of a felony offense. (Doc. 1). On January 16, 2024, Defendant appeared before United States Magistrate Judge Thomas Q. Langstaff for his initial appearance and arraignment.

On June 25, 2024, Defendant filed the instant Motion (Doc. 36), wherein Defendant requested an evidentiary hearing on the Motion. (Doc. 36 at 7). The Government filed a timely Response (Doc. 38) on July 15, 2024. The Court held an evidentiary hearing on the Motion on September 3, 2024. At the conclusion of the evidence, the Court provided the Parties the opportunity to submit post-hearing briefs. (*See* Doc. 42). Neither Party, however, made such submissions, and with the deadline to do so having passed, the Motion is ripe for decision.

## II. FACTUAL FINDINGS

At the September 3, 2024 hearing on Defendant's Motion to Suppress, the Government presented two witnesses, Officers Joshua Abercrombie ("Abercrombie") and

1

Joshua Box ("Box"), and eight exhibits. Defendant presented no witnesses, and his five exhibits were admitted without objection. Upon review and consideration of the exhibits, witness testimony, and the Parties' arguments, the Court makes the following findings of fact.

In the early morning hours of November 1, 2022, two officers from the Valdosta Police Department, Officers Abercrombie and Box, were dispatched to the Jolly Inn, a motel located at 1701 Ellis Drive, Valdosta, Georgia, in response to a 911 call reporting suspicious activity in the motel's parking lot. The caller, who wished to remain anonymous, reported seeing two black males walking around the lot and peering into parked cars. The caller gave a description of the males, including their clothing and hair styles, and stated that the pair were driving an older model black four-door car. No information was given regarding the make, model, or license plate of the car. The call was made at 4:42 A.M.

Abercrombie and Box were dispatched to the Jolly Inn at 4:43 A.M., and while en route, were advised that the suspicious persons were black males driving a small black vehicle. The officers arrived on the scene at approximately 4:46 A.M. in separate patrol vehicles. Upon surveilling the parking lot, the officers spotted a black four-door car matching the description of the car reported by the anonymous caller. The officers did not see any other cars or individuals moving about the parking lot.

Abercrombie instructed Box to stop the vehicle, which he did by stepping out of his patrol vehicle and motioning for the car to stop. Upon making contact with the driver, the officers observed a shotgun by the driver's leg wedged between the driver's seat and the car's center console. At that point, Abercrombie and Box removed the driver and passenger—two black males matching the description given by dispatch from the 911 call—from the vehicle for officer safety. The officers also removed two black females from the back seat. Each occupant was asked to provide identification, and the officers were able to quickly identify the driver and one of the female occupants. The front seat passenger and the other female, however, provided false identification. Observing that the identification card provided by the male passenger appeared suspicious, officers asked him to provide his name and date of birth without the identification card, and the passenger refused. A subsequent search of the vehicle revealed an identification card belonging to one Eddie Lee Flournah, Jr., which allowed officers to identify the passenger as Defendant Flournah.

After observing a glass pipe commonly associated with illegal drug use in the front passenger seat, officers searched the vehicle and found other drug paraphernalia, some of which had drug residue on them, and a tan ATA Arms 12-gauge shotgun. Abercrombie located several small plastic bags containing a white powder residue on the driver's side of the car, which prompted him to pause the search and place the driver and front seat passenger in handcuffs. After they were detained, another officer conducted a pat-down of the two men, finding a semi-automatic pistol on Defendant Flournah's person. Officers conducted a criminal history check and discovered two active warrants for Defendant's arrest as well as a previous conviction for cocaine possession. Defendant Flournah was arrested and subsequently indicted by a grand jury in the instant case on one count of possession of a firearm by a convicted felon.

## III. LAW AND ANALYSIS

Defendant, as the movant, "bears the burdens of proof and persuasion" that his Fourth Amendment rights have been violated. *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (citing *United States v. Eyster*, 948 F.2d 1196, 1209 (11th Cir. 1991)). Defendant moves to suppress the firearm recovered from the assertedly illegal search and seizure of his person. (Doc. 36 at 8). Defendant's motion raises a single discrete issue, that is, whether officers had reasonable suspicion to conduct an investigatory stop of the vehicle on November 1, 2022.[1]

### A. The Validity of the Investigatory Stop

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). It is well established, however, that a "law enforcement officer may conduct a brief investigative stop of a vehicle, analogous to a *Terry*-

---

[1] The Court notes that Defendant's request for an evidentiary hearing alludes to a Fifth Amendment violation. (*See* Doc. 36 at 7). The Court's review of the arguments contained in Defendant's Motion, however, along with the evidence presented at the September 3, 2024 hearing, do not indicate that Defendant asserts a violation of his Fifth Amendment rights. The Court, therefore, declines to resolve any challenge under the Fifth Amendment as the issue is not properly before the Court.

3

stop, if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct."[2] *United States v. Harris*, 928 F.2d 1113, 1116 (11th Cir. 1991).

To satisfy this standard, an "officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005). In other words, an "inchoate and unparticularized suspicion or hunch of criminal activity" is not sufficient to meet the standard of reasonable suspicion. *Id.* In conducting this inquiry, courts look at the totality of the circumstances to determine whether the officer had "a particularized and objective basis for suspecting legal wrongdoing." *Id.* The "inquiry ultimately hinges on 'both the content of information possessed by police and its degree of reliability.'" *United States v. Bruce*, 977 F.3d 1112, 1117 (11th Cir. 2020) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

   1. *The Anonymous Tip*

An anonymous tip, under the appropriate circumstances, can provide the basis for reasonable suspicion to make an investigatory stop. *Navarette v. California*, 572 U.S. 393, 398 (2014). The first step is to determine whether the tip—in this case, the 911 call—is reliable. *See Bruce*, 977 F.3d at 1117. An anonymous tip bears adequate indicia of reliability if a caller (1) claims eyewitness knowledge of the events, (2) provides a contemporaneous report of said events, and (3) uses the 911 emergency system to make the report. *Id.* (citing *Navarette*, 572 U.S. at 398–400). Here, all three indicia are present.

First, the caller claimed eyewitness knowledge of the events occurring in the Jolly Inn's parking lot. When the call was picked up by the dispatch operator, the caller stated, "Hey. I'm at the Jolly Inn. [There are] suspicious guys out here walking around. And it look [sic] like they [sic] trying to get in people's cars because they keep passing people's cars, and looking in." Because the caller gave a first-hand account, "that 'basis of knowledge lends significant

---

[2] Although the stop could, under certain circumstances, be categorized as a traffic stop requiring officers to have probable cause, resolution of this issue makes no difference in the outcome of Defendant's motion. *See United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009) (quoting *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) and *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008)) ("A traffic stop, which 'is a seizure within the meaning of the Fourth Amendment, is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with *Terry*.'").

4

support to the tip's reliability'—even where the caller's identity is unknown." *Bruce*, 977 F.3d at 1117 (quoting *Navarette*, 572 U.S. at 399).

Second, the caller gave a contemporaneous report by describing the events as she was seeing them. When asked by the operator if the two men were still walking around the parking lot, the caller stated that "one got in the car and the other is still standing, like, out in the parking lot." The caller also used a progressive verb tense to describe the suspects' continuing actions while she was responding to the operator's questions about the suspects' clothing and the location and characteristics of the black car. When the officers arrived a few minutes later, they confirmed that two black males were driving a black four door car, as described, and at the address provided, which also suggests that the caller reported in real-time. *See Bruce*, 977 F.3d at 1118 (quoting *Navarette*, 572 U.S. at 399) ("That sort of contemporaneous report has long been treated as especially reliable.").

Third, the witness called 911 to report the incident. *See Navarette*, 572 U.S. at 399 ("Another indicator of veracity is the caller's use of the 911 emergency system."). The Court finds that the presence of these three factors made the tip reliable on its own, without the officers independently observing any criminal activity. *See Bruce*, 977 F.3d at 1118.

   2. *Reasonable Suspicion*

The Court's analysis, however, does not end there because "[e]ven a reliable tip will justify an investigative stop only if it creates reasonable suspicion that 'criminal activity may be afoot.'" *Navarette*, 572 U.S. at 401 (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Here, while en route to the Jolly Inn, Officers Abercrombie and Box were advised by dispatch of two black males who were "trying to get in vehicles[.]" The officers were told that the individuals, one of which was wearing blue jeans and a gray shirt with braids and the other wearing blue jeans and an unknown colored shirt with a short hair cut, "drove up in a blk [sic] car and is [sic] backed in to a spot[,]" and that the car was an older model and had four doors. When the officers arrived, they encountered a car matching this description being driven by two black males. There were no other individuals or cars moving about the parking lot.

These specific, articulable facts—the combination of the matching dispatch description regarding suspicious individuals looking into parked vehicles, the fact that no other cars or individuals were present in the parking lot, the time the incident was reported, 4:42 A.M., and

5

the fact that officers arrived mere minutes after the call was made—provide the minimal level of objective justification necessary to support a finding of reasonable suspicion. The Court thus finds, based on the totality of the circumstances, that the officers had reasonable suspicion to perform an investigatory stop of the vehicle.

Defendant, on the other hand, contends that the caller did not provide enough information to create a reasonable suspicion that "criminal activity may be afoot" because the caller (1) was unable to identify the clothing worn by one of the individuals, (2) did not describe the physical characteristics of the individuals, including their height, weight, age, or footwear, (3) was unable to provide the make, model, or license plate number of the black car, and (4) "did not inform 911 that the 'suspicious individuals' were trying to break into any vehicle." (Doc. 36 at 6). The Court disagrees.

That the caller did not identify the clothing worn by one of the individuals or the details of the car, or provide information about the suspects' height, weight, or age is not dipositive because "some discrepancy between a description provided by dispatch and the officer's observation does not eliminate reasonable suspicion." *United States v. Reed*, No. CR 116-050, 2017 WL 3084097, at *11 (S.D. Ga. July 19, 2017); *see United States v. Cortez*, 449 U.S. 411, 418 (1981) (noting that reasonable suspicion "does not deal with hard certainties, but with probabilities"); *Illinois v. Wardlow*, 528 U.S. 119, 126 (2000) ("*Terry* accepts the risk that officers may stop innocent people.").

Furthermore, the Supreme Court has "firmly rejected the argument 'that reasonable cause for an investigative stop can only be based on the officer's personal observation, rather than on information supplied by another person.'" *Navarette*, 572 U.S. at 397 (quoting *Adams v. Williams*, 407 U.S. 143, 147 (1972)). Given the tip's reliability, which has already been established, the officers were not required to forget why they had been called to the scene. *See United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) ("[A] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity."). Whatever innocent conduct might explain looking into cars, in a deserted parking lot, at 4:42 A.M. does not negate the officers' reasonable suspicion.

## **CONCLUSION**

In sum, the Court finds, based on the totality of the circumstances, that the officers had reasonable suspicion to perform an investigatory stop of the vehicle. For the foregoing reasons, Defendant's Motion to Suppress (Doc. 36) is **DENIED**. Defendant makes no argument that, notwithstanding reasonable suspicion for the investigatory stop, the search was illegal or otherwise without a legal basis. Therefore, the Court does not address that issue.

**SO ORDERED**, this 11th day of December 2024.

                                          **/s/ W. Louis Sands**
                                          **W. LOUIS SANDS, SR. JUDGE**
                                          **UNITED STATES DISTRICT COURT**